IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RUBEN WOODS,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )      CIVIL ACTION NO. 3:07cv1122-WC
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
            Defendant.                )

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

Plaintiff Ruben Woods applied for disability insurance benefits pursuant to Title II of

the Social Security Act, 42 U.S.C. § 401 *et seq.* (2000) (hereinafter "the Act").   His

application was denied at the initial administrative level.   Plaintiff then requested and

received a hearing before an Administrative Law Judge (ALJ).   Following the hearing, the

ALJ also denied the claims.   The Appeals Council rejected a subsequent request for review.

The ALJ's decision consequently became the final decision of the Commissioner of Social

Security (Commissioner).[1]   *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   The

case is now before the Court for review under 42 U.S.C. § 405(g).   Pursuant to 28 U.S.C. §

636(c), both parties have consented to the conduct of all proceedings and entry of a final

---

[1]      Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction

(Doc. #10); Def.'s Consent to Jurisdiction (Doc. #11).  Based on the Court's review of the

record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of
> Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

---

[2]     A "physical or mental impairment" is one resulting from anatomical,
physiological, or psychological abnormalities which are demonstrable by medically acceptable
clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an

---

[3]     *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]     *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-nine years old and had completed the tenth grade at the time of the hearing before the ALJ. (Tr. 50, 266). Plaintiff's primary past relevant work experience involved repairing sewer lines and dishwashing. (Tr. 85). Following the administrative

4

hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 8, 2002 (Step 1).  (Tr. 19).  At Step 2, the ALJ found that Plaintiff suffers from the "following severe impairments: lumbar degenerative disc disease, status post lumbar laminectomy performed in March 2003, and lumbar spondylosis with post-laminectomy syndrome."  (Tr. 19).  The ALJ nonetheless found Plaintiff "does not possess an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (Tr. 20).  Next, the ALJ found that Plaintiff retains the RFC to "for a range of light work," although "in the performance of work activity, [Plaintiff] is to perform no pushing and pulling with lower extremities."  The ALJ further found that Plaintiff should be "limited to performing simple, routine and repetitive tasks as consistent with unskilled work activity."  (Step 3).  (Tr. 20).  At Step 4, the ALJ found that Plaintiff could not perform his past relevant work.  (Tr. 24-25).  At Step 5, and after obtaining the testimony of a vocational expert, the ALJ determined that, based on his age, education, past work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy.  (Tr. 25-26).  Consequently, the ALJ found Plaintiff had not been disabled since the alleged onset date.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff sets forth five claims in challenging the Commissioner's decision:  (1) that the ALJ failed to "give proper consideration to the side effects of the many medications Plaintiff has taken since the date of his injury"; (2) that the ALJ erred in according less than

full credibility to Plaintiff's statements regarding his symptoms and their "intensity, persistence, and limiting effects"; (3) that the "ALJ committed error in the method and manner in which he evaluated the records of Dr. Woodfin, the consult[ative] physician"; (4) that the ALJ erred in affording "the State Agency RFC Assessment for light work 'significant and concurring weight'"; and (5) that the ALJ improperly discounted the responses of Dr. Auerbach to the medical questionnaire propounded to him by Plaintiff's counsel in advance of the hearing. The Court will address each of Plaintiff's clams in turn.

## V.    DISCUSSION

### A.    *The ALJ's treatment of the side effects of Plaintiff's medications.*

Plaintiff contends that the ALJ erred in failing to give proper consideration to the side effects of the various medications given Plaintiff since his injury.  He states as follows:

> Plaintiff stated in his testimony that he did not drive any longer because of the side effects of his medications.  The ALJ referred to the pain medications at different points but nowhere did he discuss or give any consideration to the listed and stated side effects for Vioxx, Methadone, Naprosyn, Pamelor, etc. The medications had labels with warnings as to side effects and attempting to operate a vehicle or machinery while taking the medications.

(Doc. 12 at fourteenth unnumbered page).  Defendant maintains Plaintiff's subjective testimony about side effects at the hearing was properly weighed by the ALJ against the lack of such evidence in the record, which otherwise documented many of Plaintiff's pre-hearing complaints about medication side effects.  Thus, Defendant argues, the ALJ was justified in giving limited consideration to the alleged side effects complained of by Plaintiff.  (Doc. #15

6

at 4-5).

At the hearing before the ALJ, Plaintiff offered testimony that his prescribed medications make him drowsy, and that he therefore had not driven in at least eight months. (Tr. 273). Among the medications Plaintiff testified to taking was carisoprodol, the generic name for the popular drug Soma, which was originally prescribed by Dr. Auerbach to Plaintiff in September, 2004, after Plaintiff complained of "mild insomnia," (Tr. 231) and which Plaintiff testified that he took three times a day. (Tr. 274). In March, 2005, Plaintiff "denied insomnia" to Dr. Auerbach. (Tr. 228). Two months later, Dr. Auerbach recorded that Plaintiff "is still having a lot of trouble sleeping at night." (Tr. 227). Over the next few months, Plaintiff continued to complain of "insomnia" and "trouble sleeping" to Dr. Auerbach. (Tr. 257-260). Then, in August, 2005, Plaintiff once again "denied insomnia." (Tr. 256). In March, 2006, Plaintiff again complained of insomnia to Dr. Auerbach. (Tr. 251). Thus, it is apparent from the record that, while Plaintiff's efforts to deal with his insomnia achieved mixed results at best, he mostly complained of being unable to sleep.[5] What is also apparent from a review of the record is that Plaintiff never once complained to Dr. Auerbach that his medications made him sufficiently drowsy to prohibit driving, operate any kind of equipment, or undertake other daily life activities. When Plaintiff did complain

---

[5]     Plaintiff's hearing testimony about his sleep (or lack thereof) and drowsiness was similarly inconsistent. At the hearing, Plaintiff at one point stated, "[p]ills make me sleepy." (Tr. 271). A few questions later, however, Plaintiff testified that "I be taking my pills and stuff but I can't sleep." (Tr. 272). In light of the inconsistencies surrounding Plaintiff's various representations, it was not unreasonable for the ALJ to deem Plaintiff's assertion that his medications make him prohibitively drowsy less than wholly credible.

7

of side effects to prescribed medications, Dr. Auerbach dutifully noted the complaints and adjusted his medications accordingly.  *See, e.g.,* Tr. 251.  In any event, given the paucity in the record of objective evidence corroborating Plaintiff's subjective testimony about his alleged drowsiness due to medications, the ALJ was justified in discounting the credibility of such testimony.  Accordingly, the ALJ's consideration of the side effects of Plaintiff's medication was appropriate and is supported by substantial evidence.

**B.     The ALJ's treatment of Plaintiff's testimony about the frequency, intensity, and limiting effects of his symptoms.**

Deeming the ALJ's findings "absurd," Plaintiff contends the "ALJ erred at Page 4, Paragraph 4 (TR 20) and Page 8, Paragraph 2 (TR24) wherein he only gave 'some credibility' and 'not entirely credible' to Plaintiff's stated symptoms, intensity, persistence, and limiting effects of his symptoms."  (Doc. #12 at fourteenth and fifteenth unnumbered page).  Plaintiff argues that the record, particularly the treatment notes of Dr. Auerbach, corroborate Plaintiff's testimony about his symptoms and the resulting limitations.  Defendant maintains that the ALJ gave appropriate weight to Plaintiff's allegations after balancing his subjective testimony with the evidence in the record.

Plaintiff testified that he endured constant pain in his lower back and right leg[6] (Tr. 269-70), and that, as a result of the pain and his medications, he is prohibited from doing

---

[6]     Elsewhere in the record, Plaintiff indicated that his *left* leg was a source of constant pain.  *See* Pain Questionnaire (Tr. 77).  Plaintiff's testimony at the hearing concerning his left leg indicated only that occasionally the pain from his right leg "move from one to the other one but mostly I can feel it in my right."  (Tr. 269-70).

8

virtually anything other than eating, sleeping, sitting, and standing or walking for small periods.  In light of the ALJ's view of available medical records, which the ALJ meticulously summarized in the course of his credibility findings (Tr. 20-24), the ALJ ultimately afforded Plaintiff's complaints about the severity and limiting effects of his pain only limited credibility.  (Tr. 20, 24).

The Eleventh Circuit Court of Appeals has articulated a three-part

'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.  The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so. . . .  A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).  If this Court finds that substantial evidence, i.e., "more than a scintilla, but less than a preponderance," supports the ALJ's credibility finding, then the ALJ's determination may not be disturbed.

In this case, the ALJ clearly found the existence of an underlying medical condition. However, the ALJ did not find that "objective medical evidence" confirmed the severity of Plaintiff's allegations of pain, or that Plaintiff's medical condition was so severe that it could

9

have been reasonably expected to cause pain as severe as that alleged by Plaintiff.  In reaching this conclusion, the ALJ found Plaintiff's testimony about the severity of his pain "not entirely credible."  Substantial evidence supports the ALJ's credibility finding.  This evidence includes, as the ALJ noted, the questionnaire completed by Plaintiff, which indicated that he was capable, minimally, of driving his daughter to school and walking about his home.  (Tr. 79).  More important, however, were Dr. Auerbach's opinion that Plaintiff could perform "light duty" work (Tr. 236, 238-240) and the State agency RFC assessment which also cleared Plaintiff for light work.  (Tr. 219-226).  While, in answering the questionnaire given him by Plaintiff's counsel (Tr. 250), Dr. Auerbach arguably wavered from his opinion that Plaintiff could perform light work, the ALJ was justified in relying upon all of the evidence in the record, including Dr. Auerbach's opinions which were not rendered solely in preparation for the hearing.  Likewise, although Plaintiff complained of constant, disabling pain to Dr. Auerbach, it is important to recognize Dr. Auerbach's observation that Plaintiff's pain was treatable and had improved with medication.  (Tr. 251, 255, 256, 259).  In sum, there are sufficient inconsistencies between Plaintiff's complaints,[7] his testimony,[8] and the findings of Dr. Auerbach, that the ALJ was justified in finding Plaintiff's testimony regarding the intensity, duration, and limiting effects of his pain "not

---

[7]      Plaintiff's characterization of his pain has generally oscillated between "moderate" and improved with medication to  "severe" and disabling.

[8]      As noted *supra*, Plaintiff has given alternating and/or conflicting accounts of his pain levels, his sleeping problems, and even which leg suffers from constant pain.

entirely credible" and therefore placing greater reliance on the medical evidence before him, including treating physician and State agency opinion which deemed Plaintiff capable of performing light work.

### C.    The ALJ's evaluation of Dr. Woodfin's records.

Plaintiff contends the "ALJ committed error in the method and manner in which he evaluated the records of Dr. Woodfin, the consult[ative] physician at Page 8, Paragraph 4 (TR 24)."  (Doc. #12 at fifteenth unnumbered page).  Plaintiff objects to the ALJ's determination that, although "Dr. Woodfin's objective findings on examination are afforded significant weight," his conclusion that Plaintiff was incapable of lifting or carrying anything is "inconsistent with his clinical findings" and therefore entitled to no weight.  (Tr. 24). Specifically, Plaintiff claims that "Dr. Woodfin gave a fair, impartial, and medically experienced opinion about the state of the distress and chronic pain and physical limitation of Plaintiff."  (Doc. #12 at fifteenth unnumbered page).  Defendant maintains that "[s]ubstantial evidence supports the ALJ's finding that Dr. Woodfin's opinion was not entitled to significant weight."  (Doc. #15 at 8).

"The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).[9]  In this instance, the ALJ viewed the following evidence as contrary to Dr. Woodfin's opinion that

---

[9]      It is important to note that, because Dr. Woodfin was not a treating physician, the "good cause" finding required before the ALJ may properly reject such opinion, *see Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004), was not required.

Plaintiff could not lift or carry anything: the objective clinical results of Dr. Woodfin's examination of Plaintiff, which indicated that Plaintiff maintained full motor and pinch/grip strength in his upper extremities (Tr. 217), and Dr. Auerbach's opinion, rendered before and affirmed after Dr. Woodfin's December 19, 2003, examination, that Plaintiff is capable of performing light work (Tr. 239, 242). *See* ALJ's Decision (Tr. 21-22). The ALJ also was undoubtedly cognizant that Dr. Woodfin's opinion was essentially an endorsement of Plaintiff's representation to Dr. Woodfin that he was incapable of lifting and carrying. (Tr. 217). Given the lack of any objective evidence supporting the sweeping and substantial limitation opined by Dr. Woodfin and the ALJ's findings regarding Plaintiff's credibility, the ALJ's refusal to accept Dr. Woodfin's assent to Plaintiff's representation that he cannot perform lifting or carrying is supported by substantial evidence.

**D.     *The ALJ's treatment of the State Agency RFC Assessment.***

Plaintiff contends the "ALJ erred at Page 8, Paragraph 5, of his decision (TR 24) wherein he gave the State Agency RFC Assessment for light work 'significant and concurring weight.'" (Doc. #12 at sixteenth unnumbered page). Plaintiff claims that the "ALJ failed to clearly articulate the reasons for giving the State Agency Assessment 'significant and concurring weight' while failing to articulate reasons for giving less weight to the opinions of the treating physicians," in violation of 20 C.F.R. § 404.1527(d)(2). *Id.* Defendant maintains that the ALJ's decision to afford the State Agency RFC assessment "significant and concurring weight" is supported by substantial evidence.

To the extent Plaintiff's claim can be read to assert that the ALJ was required, by 20 C.F.R. § 404.1527(d)(2), to articulate the reasons why he afforded the State agency RFC assessment "significant" weight, the claim is without merit.  The ALJ is not required to give reasons for accepting the opinion of State agency medical consultants.  Indeed, as noted by the ALJ in his opinion, the ALJ is required, by SSR 96-6p, to regard State agency findings as "expert opinion evidence" to be evaluated along with all other medical evidence in the record.  Moreover, to the extent the ALJ may nevertheless have been required to articulate a reason for affording the State agency opinion "significant" weight, it is apparent from the opinion that he viewed the State agency RFC assessment as largely consistent with the findings of Drs. Auerbach and Woodfin.  (Tr. 24).

If Plaintiff intends to assert that the ALJ was required to articulate specific reasons why the opinion of the State agency RFC assessment was purportedly afforded greater weight than that of a treating or examining physician, then that claim is similarly without merit.  The reasons the ALJ was justified in discounting a portion of Dr. Auerbach's opinion will be addressed *infra* in discussing Plaintiff's fifth claim of error.  For present purposes, it is sufficient to demonstrate that the ALJ's decision to afford the State agency RFC assessment "significant" weight is supported by substantial evidence.  The State agency RFC assessment is mostly consistent with Dr. Auerbach's conclusion that Plaintiff may perform light work, as well as Dr. Woodfin's objective findings in the musculoskeletal exam.  To the extent discrepancies were found, in determining Plaintiff's RFC the ALJ construed such

discrepancies against the State agency RFC findings.[10]  Accordingly, the ALJ's decision to afford the State agency RFC assessment "significant" weight, subject to the modifications made by the ALJ in determining Plaintiff's RFC, is supported by substantial evidence.

    **E.**    *The ALJ's treatment of the questionnaire completed by Dr. Auerbach.*

Plaintiff contends the "ALJ erred at Page 7, Paragraph 5 of his decision (TR 23) when he refused to give [controlling weight to] the answers of Dr. Auerbach to the medical questionnaire when he concluded that the medical questionnaire was not consistent with his own treatment notes of the Plaintiff."  (Doc. #12 at sixteenth unnumbered page).  Plaintiff argues that Dr. Auerbach's responses to the questionnaire are consistent with his observations of Plaintiff over a period of years, and that the ALJ found Dr. Auerbach's answers to the questionnaire incredible only because "the ALJ knew he could not allow the medical questionnaire responses of Dr. Auerbach to stand and enter the Unfavorable Decision which he had already predetermined to do."  *Id.*  Defendant asserts that substantial evidence supports the ALJ's decision to deny controlling weight to Dr. Auerbach's medical source statement.

"The opinion of a treating physician . . . 'must be given substantial or considerable

---

[10]    For instance, the State agency RFC assessment found that Plaintiff could stand and/or walk about six hours in an eight-hour work day.  (Tr. 220).  However, given the entirety of the medical evidence in the record, the ALJ limited Plaintiff's standing and/or walking to just two hours in an eight-hour workday.  (Tr. 20).  The State agency RFC assessment also concluded that Plaintiff's capacity to push and/or pull, including with foot controls, was unlimited.  (Tr. 221).  However, the ALJ explicitly precluded Plaintiff from "pushing and pulling with lower extremities."  (Tr. 20).

weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.   When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* at 1241 (internal citations omitted).

Dr. Auerbach had served as Plaintiff's treating physician for a number of years prior to the hearing.   Dr. Auerbach had previously determined that Plaintiff was capable of performing light work and kept detailed notes on his interactions with and treatment of Plaintiff over the history of their relationship.   On June 5, 2006, approximately three weeks before the hearing, Dr. Auerbach completed a two-part yes or no questionnaire submitted to him by Plaintiff's attorney.   The questionnaire required Dr. Auerbach to affirm whether, if Plaintiff testified at the hearing that he 1) "would have at least 4 or 5 days per month which would either prevent him from attending work for a full day or which would cause him to have to leave work before a full day was completed even if allowed to sit and stand at his convenience," and 2) "that he has periods [in] which he finds it necessary to get off his feet and rest in the bed to ease his pain at least 2 days per week for extended periods of time in the morning and afternoon," would such testimony "be consistent with the severity of the medical problems for which you are treating him?"  (Tr. 250).  Dr. Auerbach answered both

questions affirmatively.  In response to questioning by his attorney at the hearing, Plaintiff gave testimony consistent with the hypothetical testimony embraced by the questionnaire. (Tr. 277-78).  Moreover, the vocational expert also testified that absenteeism similar to that described in the questionnaire and in Plaintiff's testimony would "preclude competitive employment."  (Tr. 279-80).

In summarizing the medical evidence before him, the ALJ meticulously catalogued the treatment notes and other records from Dr. Auerbach.  (Tr. 22-24).  Based on the ALJ's review of these materials and all other "objective medical" evidence in the record, he concluded that "Dr. Auerbach's answers to the Medical Questionnaire are not consistent with his own treatment notes of the clamant or with his previous opinions that the claimant was able to perform light duty work in accordance with established standards of the U.S. Department of Health and Human Services."  (Tr. 23-24).  Courts have affirmed that "good cause" to afford treating physician opinion less than controlling weight exists when the treating physician opinion is "conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.  Substantial evidence supports the ALJ's finding that Dr. Auerbach's responses to the questionnaire are conclusory and inconsistent with his treatment notes and previously rendered opinions.  Namely, as alluded to above, Dr. Auerbach had previously cleared Plaintiff for light duty work and had reaffirmed that opinion in follow-up visits by Plaintiff.  (Tr. 242, 239-40, 238, 236).  Additionally, Dr. Auerbach's treatment notes generally indicate that Plaintiff's pain could be treated with a measure of

16

success by prescribed medications.  In any event, while Dr. Auerbach's treatment notes always studiously recorded Plaintiff's complaints of pain, Dr. Auerbach never adjusted his opinion that Plaintiff was capable of light work until given the questionnaire by Plaintiff's counsel.  Given the stark and abrupt change in opinion manifested by the questionnaire, as well as its leading nature and lack of provision for analysis or elaboration, the ALJ was justified in placing greater reliance on the treatment notes and previous opinions of Dr. Auerbach, which are reflective of the entire history of his relationship with Plaintiff and which permitted him greater latitude in conceptualizing Plaintiff's pain and its limiting effects.  Accordingly, substantial evidence supports the ALJ's decision to afford less than controlling weight to Dr. Auerbach's responses to Plaintiff's counsel's questionnaire.

## VI.    CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

DONE this 13th day of February, 2009.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE